## STATE *vs.* ORSAMUS SYMONDS.

No citizen of this State can be deprived of the right of suffrage under the act of congress of March 2, 1865, c. 79, § 21, until after conviction and sentence by a court-martial of the United States.

An indictment for illegal voting at an election of State officers based upon a disqualification by reason of desertion from the army of the United States, must specifically set forth the crime of desertion.

Evidence of the defendant's admission of the crime of desertion is not admissible in support of an indictment for illegal voting, not containing any allegation of desertion.

Nor is the unauthenticated roll of the company to which he belonged.

ON EXCEPTIONS to the ruling of *Goddard,* J., of the superior court for Cumberland county, and motion in arrest of judgment.

INDICTMENT alleging that Orsamus Symonds, of Casco, in the county of Cumberland, laborer, on the fourteenth day of September, in the year of our Lord one thousand eight hundred and sixty-eight, at Casco, in said county of Cumberland, at the election of State and county officers, then and there in the town of Casco, in the county aforesaid, he the said Orsamus Symonds, then and there having no legal right to vote in said town of Casco, knowingly did vote, he the said Orsamus Symonds, then and there well knowing that he then and there had no legal right [to vote in said town, against the peace of said State, and contrary to the form of the statute in such case made and provided.

At the trial it was claimed on the part of the government that the respondent was a deserter from the United States army, and thereby had forfeited his right to vote by virtue of § 21, c. 79 of the act of congress of March 2, 1865.

In order to prove the desertion, a government witness was permitted, against the seasonable objections of the respondent, to testify that the respondent had admitted to him that he was a deserter.

The captain of the company to which the respondent belonged was called as a witness, and produced what purported to be the original roll of the company. It appeared in evidence that the witness had succeeded to the command of the company after the respondent had left. The officer, whose duty it was to make and keep the roll, was not produced. The introduction of the paper in evidence was seasonably objected to, but admitted.

The jury found the respondent guilty, and he alleged exceptions to the rulings admitting the testimony mentioned.

*W. H. Vinton & A. B. Holden*, for the respondent.

*N. Webb*, county attorney, *contra*.

DICKERSON, J. The respondent was indicted under c. 4, § 65, of the Revised Statutes, for illegal voting, at an election of State officers held at Casco, on the 14th day of September, 1868.

It was claimed, on the part of the government, but not alleged in the indictment, that the defendant was a deserter from the United States army, and had thereby forfeited his right to vote, according to the 21st section of c. 79, of the law of congress approved March 2, 1865. In order to prove the desertion, the government offered to prove certain alleged admissions of the respondent, and to introduce the roll of the company to which he belonged at the time of the pretended desertion. This evidence was seasonably objected to by the respondent's counsel, but the court overruled the objection, and the evidence was presented to the jury. The verdict was, "guilty," and the respondent filed exceptions to the ruling of the court, admitting the foregoing testimony.

Section 21, c. 79, of the laws of congress passed in 1865 enacts, "That in addition to the other lawful penalties of the crime of desertion from the military or naval service of the United States, all persons who have deserted the military or naval service, who shall

not return to said service or report themselves to a provost marshall within sixty days after the proclamation hereinafter mentioned, shall be deemed and taken to have voluntarily relinquished and forfeited their rights of citizenship, and their rights to become citizens."

If this act of congress undertook to prescribe the qualifications of electors in the States, it would be unconstitutional, since, under the constitution of the United States, that prerogative is reserved to the States. But it attempts no such thing, the object of the section in question being to prevent the offense of desertion by depriving the offender of his rights as a citizen of the United States. It is clearly within the constitutional province of the legislative department of the national government to define and prescribe the rights of citizenship of the United States, and to declare their forfeiture, as a penalty for deserting the army in a death-struggle of the government for the preservation of its nationality. When a person has forfeited his rights of citizenship under this act, he loses his right of suffrage only when this right, under the constitution of the State to which he belongs, is restricted to citizens of the United States. Thus, while a congress cannot directly deprive a citizen of a State of the right of suffrage, it may deprive him of other rights upon which the right of suffrage may depend; it may incapacitate him for exercising the right of suffrage, but it cannot deprive him of the right itself. The act of congress in question goes to this extent and no further. In this State, none but citizens of the United States can exercise the elective franchise: to deprive citizens of this State, therefore, of their rights as citizens of the United States is, in effect, to deprive them of the capacity to exercise the right of suffrage.

The statute of congress is a highly penal one, and must be construed most strictly in favor of the citizen. Section 21 refers to preëxisting laws upon the subject of desertion, and should receive a construction in accordance with, and as if it had been incorporated among these statutes. It in no respect changes or dispenses with the existing machinery for trying and punishing desertion from

the army of the United States, but simply affixes an additional penalty, in certain cases, to that already prescribed. But for previous enactments this section should be imperative, as it provides no mode of trying the offense it proposes to punish by a penalty no less severe than the forfeiture of the rights of citizenship. The previous acts of congress relating to desertion contemplate a regular trial and conviction as preliminary to inflicting the penalties provided in them. For this purpose courts-martial are established.

The crime of deserting the army of the United States is exclusively an offense against the government of the United States, and can only be inquired into and punished through the courts of the United States having jurisdiction thereof. Any adjudication upon this offense, by a State tribunal, would be *coram non judice;* its decision would afford the accused no security whatever from another trial before another tribunal. Courts-martial of the United States have exclusive jurisdiction of this offense, and it is only after trial, conviction, and sentence by such court, and the approval of the same by the proper authority, that a citizen of this State can be deprived of the right of suffrage, or any right of citizenship under the act of congress in question. The record of such conviction is the only legal evidence of the fact of desertion before any tribunal where this is brought in question. *Huber* v. *Riley*, 53 Penn.

If the law were otherwise, any person who belonged to the army while this act of congress was in force, and who should be suspected of desertion, would be liable to be harassed and subjected to great expense and peril if he should apply to be appointed administrator of an estate, or guardian, or to bring a suit at law, or be admitted to any office of profit, honor, or trust to which he had been duly appointed or elected; for it is not only the right of suffrage, but all the rights of citizenship, present or prospective, that this act of congress visits with its terrible disabilities and penalties. Nor would the decision in one such investigation be a bar against others; they might be multiplied to any extent that might suit the interest, caprice, passion, or malice of the accuser. State tribunals were not designed, nor will the constitution of the United States

permit them to become inquisitorial courts for inquiring into, determining, and punishing offenses against the United States.

The constitution of the United States, Art. 5 of the amendments, provides that no person shall be deprived of life, liberty, or property without " due process of law." Due process of law, in criminal cases, requires that the charge should be effectually set forth in writing, and that the accused should have notice of the same, that he may know what he is to be tried for. This indictment calls upon the respondent to answer to the charge of illegal voting. Upon presenting himself for trial, he is at once confronted with evidence to prove that he is a deserter from the army of the United States, an offense of far greater turpitude than that alleged in the indictment, and necessary to be proved before he can be convicted of the charge he was called upon to answer. It is obvious that such procedure is not in accordance with the true intent and meaning of this provision of the constitution of the United States.

It follows that where the alleged disqualification for voting is imposed as a penalty for crime, that offense should be specifically set forth in the indictment charging the accused with illegal voting.

The evidence objected to should have been excluded, and the indictment is defective. *Exceptions and motion sustained.*

APPLETON, C. J.; CUTTING, and DANFORTH, JJ., concurred.

WALTON and BARROWS, JJ., concurred in the result.